FILED

APR - 5 2004

**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA**
U.S. DISTRICT COURT

| | |
|---|---|
| CHRISTOPHER ROBERTS,<br>7086 Ducketts Lane #302<br>Elkridge, MD 21075<br><br>    Plaintiff<br><br>vs.<br><br>Alen J. Salerian, M.D.,<br>5225 Wisconsin Avenue, NW Suite 104<br>Washington, D.C. 20015<br><br>    Defendant | CASE NUMBER 1:04CV00549<br><br>JUDGE: Ricardo M. Urbina<br><br>DECK TYPE: Personal Injury/Malpractice<br><br>DATE STAMP: 04/05/2004 |

## COMPLAINT

Plaintiff Christopher Roberts ("**Plaintiff**"), by and through undersigned counsel, sues Defendant Alen J. Salerian, M.D. ("**Defendant**"), and states the following:

### Parties

1. Plaintiff is a resident and citizen of the State of Maryland, residing at the address set forth in the caption above.

2. Defendant is a resident and domiciliary of the District of Columbia.

3. The events giving rise to this cause of action occurred in the District of Columbia.

### Jurisdiction

4. Jurisdiction in this Court is proper pursuant to 28 U.S.C. §1332.

5. Venue in this Court is proper because the event complained of herein took place in Washington, D.C.

**Facts**

6.  Plaintiff realleges paragraphs 1 through 5 as if fully set forth herein.

7.  In or about 1993, Christopher Roberts suffered from severe psychiatric and behavioral problems and consulted Defendant for psychiatric treatment and therapy.

8.  Defendant held himself out as a health care provider specializing in psychiatry; possessing that degree of skill and knowledge which is ordinarily possessed by those who devote special study and attention to the practice of medicine and especially of psychiatry.

9.  Defendant diagnosed Plaintiff as suffering from depression.

10. Plaintiff was treated by Defendant sporadically until November 1998, when Plaintiff began regularly scheduled treatment with Defendant.

11. In or about May 2002, Defendant prescribed Oxycontin for Plaintiff as a mood stabilizer at a dose of 20 mg per day.

12. From May 2002 through October 2003, Defendant altered and increased Plaintiff's dosage of Oxycontin.

13. From May 2002 through October 2003, Plaintiff was unable to live independently from his parents and required their assistance with his daily routine, Plaintiff isolated himself from family and friends, suffered from facial ticks and anxiety, lost all motivation to leave the house and would act improperly when outside the home.

14. Plaintiff was forced to refrain from many of the activities which he had regularly engaged in prior to the misdiagnosis, including meeting friends, living

independently from his family, working at a full-time job and spending time with family

15.   In October 2003, Plaintiff's dosage of Oxycontin was increased to 120 mg per day.

16.   In October 2003, Defendant discontinued Plaintiff's prescription of Oxycontin and prescribed Methadone.

17.   During October 2003, Defendant increased Plaintiff's dosage from 20 mg of Methadone per day to 120 mg per day.

18.   On or about October 21, 2003, Plaintiff was admitted to Suburban Hospital complaining of a serious adverse reaction to the medications he was taking and bed wetting, among various other problems.

19.   Suburban Hospital's medical staff concluded that Plaintiff suffered from opiate dependence and toxicity.

20.   Following his release from Suburban Hospital, Plaintiff was advised to seek a second opinion concerning his psychiatric condition.

21.   Subsequent comprehensive examinations of Plaintiff clearly revealed that Plaintiff suffered from bipolar disorder and not depression and that the medications prescribed for Plaintiff were improper for his condition and exacerbated his symptoms.

22.   Further comprehensive examinations of Plaintiff clearly revealed that the doses of Oxycontin and Methadone were improper and excessive.

### COUNT I

#### (Negligence–Medical Malpractice)

23.   Plaintiff realleges paragraphs 1 through 22 as if fully restated herein.

24.   Defendant owed a duty of care to Plaintiff to treat him with that degree

of skill and knowledge which is ordinarily possessed by those in the community who devote special study and attention to the practice of medicine.

25. Defendant owed a duty of care to Plaintiff to abide by a standard of conduct equal to those others in the medical profession with such skills.

26. Defendant breached his duty because his conduct did not comport with that degree of care reasonably expected of other medical professionals with similar skills acting under same or similar circumstances.

27. Further, Defendant knew, or in the exercise of reasonable medical care should have known, that (a) Plaintiff did not suffer from depression; (b) Oxycontin is not a mood stabilizer and was an improper medication with which to treat Plaintiff's condition; and (c) Methadone should not have been prescribed to Plaintiff.

28. Defendant breached his duty to Plaintiff by misdiagnosing Plaintiff's condition and prescribing improper medications for Plaintiff. Contrary to the accepted standards of medical and psychiatric care, Defendant failed to inform Plaintiff of the proper nature of his condition and failed to treat Plaintiff's condition properly.

29. As a result of the negligence of Defendant in failing to recognize Plaintiff's condition and psychiatric disorder, to appropriately medicate Plaintiff and to abide by a standard of care commensurate with Defendant's profession, Defendant proximately caused a worsening of Plaintiff's condition and caused Plaintiff to require additional psychiatric treatment and thereby damaged Plaintiff's health, safety, comfort and well-being, leading to his admission to Suburban Hospital to detoxify.

30. Plaintiff lives in constant fear of further illness, drug dependency and problems associated with Defendant's improper diagnosis.

31. Plaintiff was in no manner contributorily negligent and relied upon the expertise of Defendant.

32. As a result of Defendant's negligent actions, Plaintiff has suffered and will continue to suffer severe physical and psychological injuries, mental anguish, expenses and loss of income.

WHEREFORE, Plaintiff CHRISTOPHER ROBERTS demands judgment against Defendant ALEN J. SALERIAN in the amount of THREE HUNDRED THOUSAND DOLLARS ($300,000.00) in compensatory damages plus costs and interest and any and all other relief which this Court finds him entitled.

Respectfully submitted,

FINKELSTEIN & HORVITZ, PC

Nathan I. Finkelstein, DC Bar #173682
Laurie B. Horvitz, DC Bar #384702
7315 Wisconsin Avenue, Suite 400 East
Bethesda, Maryland 20814
Telephone (301) 951-8400
Attorneys for Plaintiff

**JURY DEMAND**

Plaintiff, by and through undersigned counsel, demands a jury trial on all matters triable before a jury.

Nathan I. Finkelstein